UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

HARRIS MAYS,

    Defendant.

_____/

Case No. 23-cr-20521

HON. MARK A. GOLDSMITH

**OPINION & ORDER
DENYING DEFENDANT'S (1) MOTION TO SUPPRESS (Dkt. 20) AND (2)
MOTION TO AMEND/MODIFY BOND CONDITIONS (Dkt. 36)**

Before the Court are two motions filed by Defendant Harris Mays. The first is a motion to suppress evidence seized and statements made during the execution of a warrant authorizing the search of a residence in the 9500 block of Whitcomb St., Detroit, Michigan (Dkt. 20), and the second is a motion to amend/modify his bond conditions (Dkt. 36). For the reasons set forth below, the Court denies both motions.[1]

## I. BACKGROUND

Mays is charged with felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). Indictment (Dkt. 1).

---

[1] In addition to the motion to suppress, the briefing includes the Government's response (Dkt. 27) and supplemental brief (Dkt. 35) and Mays's reply (Dkt. 31) and supplemental brief (Dkt. 34). In addition to the motion to modify/amend bond conditions, the briefing includes the Government's response (Dkt. 37). The Court held a hearing on the motion to suppress on March 26, 2024.

Mays's motion to suppress challenges a January 10, 2023 warrant issued by a magistrate judge authorizing a search of the residence in the 9500 block of Whitcomb St., Detroit, Michigan for (i) "any utility bills, telephone bills and other documents that would indicate ownership, control, use and/or residency" at the address; (ii) "[a]ny firearms, ammunition, or spent shell casings"; (iii) "any evidence pertaining to the non-fatal shooting case" [documented by the Detroit Police Department]; and (iv) "[a]ny narcotics or narcotics related items that can be used in the use, packaging, or sale of narcotics." See Warrant at PageID.113 (Dkt. 20-1). Officer Edward Pawlowski with the Detroit Police Department (DPD) provided an affidavit to secure the warrant. Aff. at PageID.112 (Dkt. 20-1).[2]

According to the affidavit, on January 8, 2023, DPD officers arrived at Henry Ford Hospital in response to a report of a non-fatal shooting. Id. ¶ 2. The officers spoke with the victim and a witness who was with the victim at the time of the shooting. Id. The victim and witness told the officers that they had been with a man named "Skee"[3]—from whom they had been purchasing narcotics for a year—to purchase cocaine. Id. ¶¶ 2–3. They described Skee's physical appearance and provided the phone number that they had used to set up the meeting. Id. They told the officers that Skee walked up to their vehicle and fired a single shot, striking the victim in the back. Id. ¶ 2.

---

[2] The supporting affidavit is appended to the warrant.

[3] The victim's statement identified the shooter as "Ski," while the witness's statement and the affidavit identified him as "Skee." See Witness Statements (Dkt. 31-2); Aff. The Court will use "Skee" throughout.

2

On January 9, 2023, a DPD officer ran the phone number provided by the victim and witness through the CLEAR system. Id. ¶ 4. The number was associated with Mays, who also matched the physical description given by the victim and witness. Id. Another officer then presented a six-photo lineup to both witnesses, both of whom positively identified Mays as the shooter. Id. ¶ 5.

The next day, Pawlowski entered Mays's name into the Law Enforcement Information Network (LEIN), which showed the Whitcomb residence as his registered address. Id. ¶ 6. Pawlowski obtained an exigent phone ping on Mays's phone number which demonstrated that the device using the number was located at the Whitcomb address. Id. ¶ 7.

Pawlowski requested a warrant to search Mr. Mays's residence. In his supporting affidavit, Pawlowski cited his "experience [] and information received from other law enforcement officers on scene" for his belief that "evidence of the non-fatal shooting" would be located there, along with Mays himself. Id. ¶ 8. He added that there was a "high probability of narcotics and narcotics paraphernalia being located inside of the residence," given the "extended period" during which the two witnesses had been purchasing narcotics from Mays. Id.

Pursuant to the warrant, agents searched the Whitcomb residence on January 10, 2023. Resp. to Mot. to Suppress at 3. During the search, DPD officers seized hundreds of rounds of various caliber ammunition in a box containing Mays's picture identification. Id. They also seized cocaine and marijuana. Id. at 3–4. On March 22, 2023, Mays was

3

charged with felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). He was later indicted on that charge by a grand jury.

## II. ANALYSIS

Mays moves to suppress the evidence seized and statements made during the execution of the warrant authorizing the search of the Whitcomb residence, asserting that the warrant fails to establish probable cause for the search. See Br. Supp. Mot. to Suppress. Separately, Mays moves to amend/modify his bond conditions. See Mot. to Modify.

The Court first addresses Mays's motion to suppress and proceeds to discuss his request to amend his bond conditions.

### A. Motion to Suppress

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched . . . ." U.S. Const. amend. IV. Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." United States v. Christian, 925 F.3d 305, 311 (6th Cir. 2019). When presented with an application for a search warrant supported by an affidavit, a judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Smith, No. 22-cr-20351, 2023 WL 336136, at *6 (E.D. Mich. Jan. 20, 2023) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

A reviewing court "must give great deference to a magistrate's determination of probable cause," and only overturn such a determination where the magistrate "arbitrarily

4

exercised his or her authority." United States v. Brown, 732 F.3d 569, 573 (6th Cir. 2013). However, "even if a magistrate judge acts arbitrarily in issuing a warrant, evidence seized pursuant to that warrant should not be suppressed if 'the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he [or she] issues [is] objectively reasonable.'" Smith, 2023 WL 336136, at *6 (quoting United States v. Leon, 468 U.S. 897, 922 (1984)).

Mays argues that the evidence gathered during the execution of the warrant must be suppressed. He submits that (i) the affidavit used to secure the search warrant lacked probable cause because it relied on stale information and failed to establish a sufficient nexus between the Whitcomb residence and the suspected criminal activity, see Br. Supp. Mot. to Suppress at 4–9; Mays Suppl. Br. Supp. Mot. to Suppress at 1–6; and (ii) the good-faith exception under Leon does not apply to avoid the exclusionary rule, see Br. Supp. Mot. to Suppress at 9–14; Mays Suppl. Br. Supp. Mot. to Suppress at 5–7. These arguments are without merit.

1. **Staleness**

Stale information cannot be used in a probable cause determination. United States v. Perry, 864 F.3d 412, 414–415 (6th Cir. 2017). The staleness inquiry is a flexible one, however, and it is not meant "to create an arbitrary time limitation within which discovered facts must be presented to a magistrate." Id. at 415 (punctuation modified). Courts are concerned with staleness of information because probable cause "is concerned with facts relating to a presently existing condition." United States v. Spikes, 158 F.3d 913, 923 (6th Cir. 1998) (punctuation modified). In assessing whether information may be considered

stale, the Sixth Circuit has directed courts to consider (i) "the character of the crime (chance encounter in the night or regenerating conspiracy?)," (ii) "the [alleged] criminal (nomadic or entrenched?)," (iii) "the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?)," and (iv) "the place to be searched (mere criminal forum of convenience or secure operational base?)." Id. (punctuation modified).

Mays argues that the statement by the victim and witness that they had been purchasing narcotics from him for the last year constitutes stale information. Br. Supp. Mot. to Suppress at 5. Because the affidavit "contains few facts indicating how often drug [sic] were sold or where," he argues, the information about Mays's alleged involvement in drug dealing is not sufficiently related to the time of the issue of the warrant. Id. The Court disagrees.

The acts described by the affidavit and the execution of the warrant were very closely related in time. The shooting occurred on January 8 and was allegedly precipitated by a drug transaction planned for that same day. Information about these events, separated from the issuance of the warrant and the execution of the search by only two days, cannot be considered stale.

The Court's review of the Spikes factors reinforces this conclusion. Regarding the first factor—the character of the crime—the affidavit identifies two suspected crimes: the shooting and the drug dealing. There is no contention that the information about the shooting was stale. Regarding the drug dealing, as noted above, the affidavit alleges that the victim, the witness, and Mays had planned to engage in a drug transaction just two days before the warrant was obtained and executed. It is true, as Mays emphasizes, that no

6

specific dates were supplied for the other instances of drug dealing. But longer-term criminal operations "may allow for greater lapses of time between the information relied upon and the request for a search warrant." United States v. Thomas, 605 F.3d 300, 310 (6th Cir. 2010). Sixth Circuit case law supports finding that the distribution of illegal drugs can be a long-term criminal operation in the context of a staleness inquiry. See United States v. Perry, No. 06-20172, 2007 WL 1017570, at *7 (E.D. Mich. Apr. 3, 2007) (noting that cases from this circuit "make clear that . . . illegal possession and distribution of drugs [] is by its nature a 'continuing' crime"); see also Spikes, 158 F.43d at 924 (holding that facts demonstrating participation in the manufacture, sale, or distribution of drugs indicated a "continuing criminal enterprise"); United States v. Rodriguez-Suazo, 346 F.3d 637, 647 (6th Cir. 2003) (finding that defendant's staleness claim was "defeated by the pattern of drug activity observed by the informant on more than one occasion").

Regarding the second and fourth factors, the fact that the Whitcomb residence was Mays's registered address suggests that he was not "nomadic" but was rather "entrenched" at the residence. The fact that the phone number the witnesses used to contact Mays for drug purchases was also located at that address further indicates that the residence may have been a "secure operational base." See Spikes, 158 F.3d at 923.

With respect to the third factor—the items seized—agents seized non-perishable items, such as firearms and ammunition. Firearms in particular are "durable goods and might well be expected to remain in a criminal's possession for a long period of time." United States v. Pritchett, 40 F. App'x 901, 905–906 (6th Cir. 2002) (holding that a witness's report of observing the defendant in possession of firearms four months before

7

the warrant's issuance was not "stale").

The Court finds that the information contained in the affidavit was not stale.

**2. Nexus Between the Whitcomb Residence and Suspected Criminal Activity**

Mays submits that the affidavit lacks a sufficient nexus between the Whitcomb residence and the suspected criminal activity because it fails to provide any evidence of drug activity occurring at the residence.

To justify a search of a residence, an affidavit must demonstrate "a nexus between the place to be searched and the evidence sought." United States v. Laughton, 409 F.3d 744, 747 (6th Cir. 2005) (punctuation modified). To satisfy the nexus requirement, there must be a "fair probability" that the location to be searched will contain evidence of the illegal activity. United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004) (punctuation modified). "[W]hether an affidavit establishes a proper nexus is a fact-intensive question resolved by examining the totality of the circumstances presented." United States v. Brown, 828 F.3d 375, 382 (6th Cir. 2016).

The Sixth Circuit has acknowledged a "struggle" in reconciling its case law regarding when evidence in an affidavit that a defendant is selling drugs creates sufficient nexus to the defendant's residence to establish probable cause. United States v. Reed, 993 F.3d 441, 452 (6th Cir. 2021). The Sixth Circuit has rejected the proposition that a defendant's "status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home," Brown, 828 F.3d at 383 (punctuation modified), while also recognizing that "[i]n the case of drug dealers, evidence is likely to be found where

8

the dealers live," United States v. Sumlin, 956 F.3d 879, 886 (6th Cir. 2020) (punctuation modified).

Mays relies on the Brown line of cases. He argues that the Court cannot find a nexus because the affidavit did not provide "detailed evidence of drug activity occurring at the Whitcomb house." Br. Supp. Mot. to Suppress at 7. The Government argues that the affidavit did provide probable cause, as the affidavit demonstrated an ongoing drug dealing relationship between Mays and the witnesses, and the phone—an instrumentality of drug dealing—was connected to his residence. See Resp. to Mot. to Suppress at 13 (citing United States v. McCoy, 905 F.3d 409, 417–418 (6th Cir. 2018) ("When a warrant application presents reliable evidence that a drug-trafficking operation is ongoing, the lack of direct known link between the criminal activity and [dealer's] residence, becomes minimal.") (punctuation modified)). The parties also disagree as to whether the affidavit does in fact establish an ongoing drug relationship, regardless of any connection to the residence. See Br. Supp. Mot. to Suppress at 7–8; Gov. Suppl. Br. at 11–13.

But the Court need not decide whether the affidavit established sufficient nexus between the drug allegations and the residence. The search warrant asserted probable cause for two separate crimes—the shooting and the intended drug transaction—and the Court finds that the affidavit established sufficient nexus between the firearm allegations and the residence.

The Sixth Circuit has stated that "a suspect's use of a gun in the commission of a crime is sufficient to find a nexus between the gun that was used and the suspect's residence." Peffer v. Stephens, 880 F.3d 256, 271 (6th Cir. 2018). In so stating, the court

9

in Peffer distinguished guns from drugs: "[u]nlike drugs, guns . . . are objects that generally remain in the suspect's possession after commission of the crime, and therefore it is reasonable to believe those possessions to be stored at the suspect's residence, absent evidence to the contrary." Id. at 273; see also Pritchett, 40 F. App'x at 906 (6th Cir. 2002) ("Firearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time.").

Here, the affidavit asserts that the victim and witness saw Mays use a gun in a shooting just two days before the search warrant was issued and executed. See Aff. at PageID.112. It was reasonable for the magistrate judge to conclude that the gun was likely to be stored at Mays's residence. This is especially true where the suspect is a prior convicted felon—as is the case here. See United States v. Bland, No. 18-cr-20555, 2018 WL 6171609, at *2 (E.D. Mich. Nov. 26, 2018) ("[S]ince felons are unable to obtain firearms through legitimate business dealings, firearms in possession of felons have enduring utility.")

Because the affidavit set forth sufficient facts to support a nexus between the shooting and the Whitcomb residence such that probable cause existed, the Court cannot conclude that the magistrate judge acted "arbitrarily" in authorizing the search warrant. And because the drugs were discovered during the lawful search for firearms and ammunition, even if there were an insufficient nexus between the drugs and the residence, the "plain view exception" would apply to validate the officers' seizure of the drugs. The plain view exception dictates that where an officer is lawfully present and has a lawful right to access an item, and the incriminating character of that item is "immediately apparent"

10

and in "plain view," the officer may seize that item. See United States v. Green, 554 F. App'x 491, 497 (6th Cir. 2014). Here, the officers were lawfully present because they had probable cause to search for evidence of the non-fatal shooting, and there is no contention that the drugs were not in plain view or that their criminal nature was not immediately apparent.

The Court must deny Mays's motion on this basis alone.

### 3. Good-Faith Exception

Even if the Court concluded that the affidavit failed to establish probable cause, the good-faith exception to the exclusionary rule would apply under Leon.

"Under Leon, the exclusionary rule does not bar from admission evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." Christian, 925 F.3d at 312 (punctuation modified). However, the good-faith exception is not applicable "when the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." United States v. White, 874 F.3d 490, 496 (6th Cir. 2017) (punctuation modified). "An affidavit that is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant has come to be known as a 'bare bones' affidavit." Id. Importantly, the "bare bones" label is "reserve[d] . . . for an affidavit that merely states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." United States v. Gilbert, 952 F.3d 759, 763 (6th Cir. 2020) (punctuation modified).

11

According to Mays, the Leon good-faith exception does not apply because any reliance on the warrant was objectively unreasonable—"a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision." Br. Supp. Mot. to Suppress at 9–10 (quoting Leon, 468 U.S. at 923). The Court disagrees. The affidavit includes allegations that clear the bare-bones hurdle: (i) the victim and witness had been purchasing narcotics from a man they called Skee for the last year, Aff. ¶ 3; (ii) when the victim and witness went to meet Skee to purchase narcotics on January 8, 2023, he shot the victim, id. ¶ 2; (iii) the phone number the witness used to contact Skee to organize the drug transaction was registered to Mays, id. ¶¶ 2, 4; (iv) the physical description of Skee provided by the victim and witness matches the description of Mays and the victim and witness positively identified Skee as Mays in a photo lineup, id. ¶¶ 3–5; (v) Mays's registered address as listed in LEIN is the Whitcomb residence, id. ¶ 6; and (vi) the exigent ping on the phone number the witness used to set up the drug transaction was located at the Whitcomb residence, id. ¶ 7. Such allegations are beyond "suspicions . . . , without . . . [a] basis of knowledge," and their inclusion in the affidavit precludes it from being characterized as "bare bones." Gilbert, 952 F.3d at 763.

And as Mays acknowledges, the Sixth Circuit has upheld searches under the Leon good-faith exception even where it found an insufficient nexus between the defendant's residence and suspected criminal activity. See Mays Suppl. Br. at 4–5; see also McCoy, 905 F.3d at 417 (6th Cir. 2018) ("[A] link between the drug dealer's activities and his home that would be insufficient to establish probable cause may suffice to establish good-faith reliance on the warrant.").

12

Mays includes additional reasons why the good-faith exception should not apply in his supplemental brief. First, he argues that the good-faith exception should not apply because the affidavit contains a materially false or misleading statement—i.e., he argues that the victim and witness never stated that they had been purchasing narcotics from Mays for the last year. Mays Suppl. Br. Supp. Mot. to Suppress at 6. However, there has been no showing that this statement is even arguably false. The victim reported that he had bought cocaine from Skee in the past, and that he had known him "since 2021." Witness Statements at PageID.281. He also stated that he bought the drugs through the witness, who would "usually" go to Skee's "side door" to purchase the drugs. Id. This provides sufficient support for the affidavit's assertion that the victim and witness had a longer-term drug dealing relationship with Skee. So does the fact that the victim stated that he owed Skee money. See id.

Second, Mays argues that the good-faith exception does not apply because the affidavit failed to establish that Mays had been previously convicted of drug trafficking or the recency of any convictions. Mays Suppl. Br. Supp. Mot. to Suppress at 6–7. Mays does not explain how this would affect the good-faith inquiry, and the Court does not see how it would. To the extent that this is another argument about sufficient nexus between the suspected drug crime and the residence, the Court has addressed that in the previous section.

Third, Mays argues that the officers deliberately omitted information they had about the specific type of weapon used to assault one of the witnesses—i.e., that the witness stated that she saw the shooter use a "black handgun." Mays Suppl. Br. Supp. Mot. to

13

Suppress at 7; Witness Statements at PageID.283. Because there was no restriction that the search be confined to a black handgun, Mays argues that the warrant was a general warrant, thereby violating the Fourth Amendment's particularity requirement. Mays Suppl. Br. Supp. Mot. to Suppress at 7. But Mays cites no case requiring that a search be confined to an item of a particular color. "[T]he degree of specificity required [for a search warrant] is flexible and will vary depending on the crime involved and the types of items sought." United States v. Green, 250 F.3d 471, 477 (6th Cir. 2001) (punctuation modified). "If the purpose of the warrant is to seize illicit property or contraband . . . a general reference is permissible." United States v. Campbell, 256 F.3d 381 (6th Cir. 2001). Firearms come in all colors and shades. A witness might describe a gun as black, when in fact it is gray or blue or brown. The notion that a restriction based on color is a Fourth Amendment requirement is contrary to the kind of flexibility that is the hallmark of Fourth Amendment jurisprudence.

Because the affidavit was not "bare bones," a reasonable law enforcement agent could rely upon it. The search is saved by the good-faith exception to the exclusionary rule, even if the affidavit lacked probable cause.

The Court denies Mays's motion to suppress.

### B. Motion to Modify/Amend Bond Conditions

Mays also requests a modification to his bond conditions. His current bond conditions confine him to his home and require him to wear a GPS monitor. Mot. to Modify ¶ 15. He seeks an amendment that would remove the home confinement and GPS

monitoring requirements. If the Court seeks to impose some restrictive condition, he requests that it be a "reasonable curfew." Id. ¶ 19.

In support of this request, Mays notes that he was discharged from custody on April 13, 2023, as a result of the dismissal of the initial complaint, and remained discharged until the indictment was filed on September 13, 2023. Id. ¶¶ 8–9. During that period, Mays remained in the state of Michigan and contacted defense counsel monthly. Id. ¶ 13. He "enrolled in vocational training, obtain[ed] verifiable employment, maintained an established residence and was not involved in any conduct that resulted in police contact of any kind." Id. ¶ 14. Because Mays did not flee to avoid prosecution or engage in criminal conduct, Mays argues, the restrictive bond conditions to which he is subject are unwarranted. Id. ¶¶ 16–17. He further adds that his pretrial services officer recommends that his bond conditions be modified to terminate home confinement and to substitute a curfew. Id. ¶ 18.

The Court may at any time amend an order specifying bond conditions "to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3). To demonstrate that an amendment to his or her bond conditions is merited, the defendant must comply with 18 U.S.C. § 3142(f)(2)'s requirement to provide new information that "has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." See United States v. Peguero, No. 3:21-cr-00010, 2021 WL 4811315, at *2 (W.D. Ky. Oct. 14, 2021) (collecting cases). Without such a requirement, "a defendant could file endless petitions to modify his conditions . . . . Courts do not ordinarily allow

15

parties to file a motion previously denied over and over again, yet without the threshold showing required in Section 3142(f)(2), nothing in the statute precludes a defendant from doing so." United States v. Gay, No. 20-cr-40026, 2020 WL 5983880, at *3 (C.D. Ill. Oct. 7, 2020).

Under this standard, the Court finds that Mays has not met his burden to modify his bond conditions. The only information he has offered that could possibly be construed as new information is that he did not flee or engage in criminal conduct between his release and his indictment. But Mays has provided no authority for the argument that compliance with the law merits minimizing restrictive conditions. Such an argument would mean that a defendant could earn a relaxation of bond conditions simply by complying with existing bond conditions. There is no logic to that proposition, and no supporting authority, as far as this Court can determine.

### III. CONCLUSION

For the reasons stated above, the Court denies the motion to suppress (Dkt. 20) and the motion to modify/amend bond conditions (Dkt. 36).

Additionally, the time period between May 27, 2024 and June 6, 2024, shall be deemed excludable delay under the provisions of the Speedy Trial Act, 18 U.S.C. § 3161, in consideration of the factors listed in § 3161(h)(1)(A) and in § 3161(h)(7)(A).

SO ORDERED.

Dated: June 6, 2024  
    Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge